750 F.2d 70
 242 U.S.App.D.C. 222
 TELECOMMUNICATIONS RESEARCH AND ACTION CENTER, et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
American Telephone & Telegraph Company, GTE Service
Corporation, Intervenors.
In re TELECOMMUNICATIONS RESEARCH AND ACTION CENTER, et al.,
Petitioners.
American Telephone & Telegraph Company, Intervenor.
 Nos. 84-1035, 84-5077.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 11, 1984.
Decided Oct. 24, 1984.
 
 Petition for Writ of Mandamus of an Order of the Federal Communications Commission
 Petition for Review of an Order of the Federal Communications Commission
 Herman Schwartz, Washington, D.C., with whom Robert M. Hausman, Washington, D.C., was on brief, for petitioners in 84-1035 and 84-5077.
 Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., with whom Bruce E. Fein, Gen. Counsel, John E. Ingle, Jane E. Mago and Linda L. Oliver, Counsel, and Alexander P. Starr, law student intern, F.C.C., Washington, D.C., were on brief, for respondent in 84-1035 and 84-5077. Robert B. Nicholson and Nancy C. Garrison, Attys.; U.S. Dept. of Justice, Washington, D.C., also entered appearances for respondent United States of America in 84-1035.
 Jules M. Perlberg, Chicago, Ill., Francine J. Berry and Alan C. Geolot, New York City, were on brief, for intervenor, American Telephone & Telegraph Co. in 84-1035 and 84-5077. Alfred A. Green, New York City, also entered an appearance for American Telephone & Telegraph Co.
 William Malone and James R. Hobson, Washington, D.C., were on brief, for intervenor GTE Service Corp. in 84-1035. Richard McKenna, Washington, D.C., also entered an appearance for GTE Service Corp.
 Before TAMM, WILKEY and EDWARDS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 The Telecommunications Research & Action Center ("TRAC") and several other not-for-profit corporations and public interest groups petition this court for a writ of mandamus to compel the Federal Communications Commission ("FCC" or "the Commission") to decide certain unresolved matters now pending before the agency. The essence of TRAC's claim is that the FCC has unreasonably delayed determining whether American Telephone and Telegraph Company ("AT&T") must reimburse ratepayers for two separate instances of allegedly unlawful overcharges. The first instance relates to the rate of return earned by AT&T and the Bell System on interstate and foreign services furnished during 1978. The second concerns the treatment of expenses incurred by AT&T's manufacturing subsidiary, Western Electric, in its development of "customer premises equipment" ("CPE")[1] during 1980-1982.
 
 
 2
 The most important question that we face in our consideration of this interlocutory appeal is a threshold jurisdictional issue. Our resolution of this issue is of particular significance because it is dispositive of both the instant case and a similar appeal involving the Civil Aeronautics Board that was argued before this panel on the same day as this case. See note 22 infra.
 
 
 3
 Our jurisdictional inquiry focuses on whether a petition to compel unreasonably delayed agency action properly lies in this court or in the District Court, or whether the two courts have concurrent jurisdiction, when any final agency action in the matter would be directly reviewable only in the Court of Appeals. Although we find the precedent in this circuit to be less than clear on this question, we conclude that, where a statute commits final agency action to review by the Court of Appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review.
 
 
 4
 On the merits of the instant appeal, we decide that, because the agency has assured us that it is now moving expeditiously to resolve the pending overcharge claims, we need not determine whether the cited delays are so egregious as to warrant mandamus. The court, however, will retain jurisdiction over this case until final disposition by the agency.I. BACKGROUND
 
 
 5
 A. The Rate of Return on Interstate and Foreign Services in 1978
 
 
 6
 In 1976, acting under the ratemaking authority conferred by 47 U.S.C. Sec. 205(a), the FCC set the maximum rate of return for AT&T interstate and foreign operations at 9.5 percent, with a .5 percent additional margin to encourage productivity and efficiency.[2] The Commission agreed not to reduce AT&T's interstate rates provided that its overall rate of return did not exceed ten percent.[3] In order "to fully protect the public," however, the FCC required that AT&T maintain an accounting of its relevant revenues to facilitate refunds if an excessive rate of return should occur.[4]
 
 
 7
 AT&T's 1978 interstate rate of return was either 10.22, 10.1, 10.02, or 9.89 percent, depending on the methodology used to calculate it.[5] On July 20, 1979, the petitioners filed a Petition for Enforcement of Accounting with the FCC in which they requested that the Commission determine whether AT&T had received excess revenues and, if so, that the FCC order appropriate relief to the ratepayers.[6] Rather than acting directly on this petition, the Commission issued a Notice of Inquiry on October 1, 1979, soliciting comments on several issues related to AT&T's earnings.[7] Both comments and reply comments were filed by the end of 1979. The Commission has taken no further action during the almost five years since the filing of comments.
 
 
 8
 Representative Timothy Wirth, Chairman of the Subcommittee on Telecommunications, Consumer Protection and Finance of the House Committee on Energy and Commerce, has twice written to the FCC to inquire about the unexplained delay in agency action. In 1981, FCC officials responded that they expected a staff recommendation that fall.[8] However, no such recommendation was produced. In the spring of 1984, agency officials modified their response and estimated that a staff recommendation would be issued that summer.[9] The agency failed on this commitment, too. Now, in the face of this court action, the Commission has recently indicated that it plans to resolve the matter on or before November 30, 1984.[10]
 
 B. The Treatment of CPE Expenses
 
 9
 In May of 1980, the FCC decided that CPE and enhanced telecommunications services[11] should no longer be regulated[12] under Title II of the Communications Act.[13] It is unnecessary to detail here the effects of this order on ratemaking and carrier accounting. It suffices to note that, in order to shield the regulated market from costs appropriately allocated to the competitive market and from anticompetitive activities, the Commission required AT&T to create a separate subsidiary to act in the enhanced services and CPE markets.[14] The FCC also required that all costs associated with competitive activities, such as CPE development costs, be charged solely to this subsidiary, not passed along to the regulated ratepayer.[15]
 
 
 10
 Between May 1980, and January of 1983, Western Electric spent about $500 million developing CPE. Because these development costs were expensed as they were incurred, the Commission, in an order dated November 10, 1982, expressed concern that between 1980 and 1982 regulated service ratepayers might have impermissibly contributed to recovery of these development expenses. But because the FCC concluded that it could not determine from the existing record whether ratepayer reimbursement for these expenses was warranted, it ordered AT&T to provide it with additional information.[16] Due to the importance of this question and because of the significant amount of money involved the FCC also invited public comments.[17] AT&T filed its comments in December of 1982 and other comments were filed in January and February 1983.[18]
 
 
 11
 On November 15, 1983, petitioners Florida Consumers Federation and others filed a Petition for Intervention and Expeditious Resolution.[19] On May 22, 1984, Chairman Wirth inquired about the status of this matter and was told that action was expected during the summer of 1984.[20] The Commission now says it will act with respect to the ratemaking treatment of these CPE development expenses on or before June 28, 1985.[21] To date, though, the Commission has not acted, either on the petition or on its own inquiry into Western Electric's CPE development expenses.
 
 II. JURISDICTION
 
 12
 As an initial matter, this case raises two significant and recurrent jurisdictional questions. First, where a statute commits final agency action to review by the Court of Appeals, does that court have jurisdiction to hear suits seeking relief that would affect its future statutory power of review? Second, if the Court of Appeals does have jurisdiction, is that jurisdiction exclusive or concurrent with that of the District Courts?[22]
 
 
 13
 We recognize that our precedent concerning jurisdiction over interlocutory appeals from agency action (or inaction) is somewhat inconsistent and may be confusing for litigants attempting to select the proper forum for these claims.[23] We are convinced that this state of disarray in which we find the law is the product of innocent inadvertence, sometimes attributable to a desire by the court and parties to promptly resolve claims of unreasonable delay, and sometimes attributable to a failure by the parties to raise or to pursue jurisdictional inquiries. Nevertheless, "[j]urisdiction is, of necessity, the first issue for an Article III court. The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds." Tuck v. Pan American Health Organization, 668 F.2d 547, 549 (D.C.Cir.1981). We are therefore obliged to consider and finally resolve the question pertaining to the jurisdiction of the Court of Appeals to hear claims of the sort raised in this case and in the companion ALPA case. See note 22, supra. In deciding this issue, for the reasons hereafter enumerated, we hold that where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals.[24]
 
 A. The Basis of Our Jurisdiction
 
 14
 We think it is clear--and no party disputes this point--that the statutory commitment of review of FCC action to the Court of Appeals, read in conjunction with the All Writs Act, 28 U.S.C. Sec. 1651(a) (1982), affords this court jurisdiction over claims of unreasonable Commission delay. Exclusive jurisdiction over review of final FCC orders is vested in the Court of Appeals by 28 U.S.C. Sec. 2342(1) (1982)[25] and 47 U.S.C. Sec. 402(a) (1982).[26] See also FCC v. ITT World Communications, Inc. ("ITT"), --- U.S. ----, 104 S.Ct. 1936, 1939, 80 L.Ed.2d 480 (1984). Here, of course, there is no final order--indeed, the lack of a final order is the very gravamen of the petitioners' complaint. This lack of finality, however, does not automatically preclude our jurisdiction.[27]
 
 
 15
 The All Writs Act provides that "the Supreme Court and all courts established by an Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions ...." 28 U.S.C. Sec. 1651(a). While it is firmly established that section 1651 does not expand the jurisdiction of a court, see, e.g., 9 J. MOORE, MOORE'S FEDERAL PRACTICE Sec. 110.26 at 282 (2d ed.1983), it is equally well settled that "the authority of the appellate court 'is not confined to the issuance of writs in aid of jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected.' " Federal Trade Commission v. Dean Foods Co., 384 U.S. 597, 603-04, 86 S.Ct. 1738, 1742-43, 16 L.Ed.2d 802 (1966) (quoting Roche v. Evaporated Milk Association, 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). This authority extends to support an ultimate power of review, even though it is not immediately and directly involved. United States v. United States District Court, 334 U.S. 258, 263, 68 S.Ct. 1035, 1037, 92 L.Ed. 1351 (1948). In other words, section 1651(a) empowers a federal court to issue writs of mandamus necessary to protect its prospective jurisdiction. Dean Foods, 384 U.S. at 603-04, 86 S.Ct. at 1742-43; United States District Court, 334 U.S. at 263, 68 S.Ct. at 1037; Potomac Electric Power Co. v. ICC ("PEPCO"), 702 F.2d 1026, 1032 (D.C.Cir.1983); Board of Governors v. Transamerica Corp., 184 F.2d 311, 315 (9th Cir.), cert. denied, 340 U.S. 883, 71 S.Ct. 197, 95 L.Ed. 641 (1950).[28] Because the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction. Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 593 (D.C.Cir.1971); see also Dean Foods, 384 U.S. at 603, 86 S.Ct. at 1742 (quoting McClellan v. Carland, 217 U.S. 268, 280, 30 S.Ct. 501, 504, 54 L.Ed. 762 (1910) (" '[w]e think it the true rule that where a case is within the appellate jurisdiction of a higher court a writ ... may issue in aid of the appellate jurisdiction which might otherwise be defeated....' ").[29]
 
 
 16
 The Administrative Procedure Act ("APA") provides additional support for our jurisdiction here. That Act directs agencies to conclude matters presented to them "within a reasonable time," 5 U.S.C. Sec. 555(b) (1982), and stipulates that the "reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed ...." 5 U.S.C. Sec. 706(1) (1982). While the APA unquestionably does not confer an independent grant of jurisdiction, Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), section 706(1) coupled with section 555(b) does indicate a congressional view that agencies should act within reasonable time frames and that court's designated by statute to review agency actions may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed. See, e.g., Public Citizen Research Group v. Commissioner, Food & Drug Administration ("PCHRG v. FDA"), 740 F.2d 21, 32 (D.C.Cir.1984).
 
 B. The Exclusivity of Our Jurisdiction
 
 17
 We also conclude that our present jurisdiction over claims that affect our future statutory review authority is exclusive.[30] It is well settled that even where Congress has not expressly stated that statutory jurisdiction is "exclusive," as it has here with regard to final FCC actions,[31] a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute. Compensation Department of District Five, United Mine Workers v. Marshall, 667 F.2d 336, 340 (3rd Cir.1981); Assure Competitive Transportation, Inc. v. United States, 629 F.2d 467, 471 (7th Cir.1980), cert. denied, 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); Rochester v. Bond, 603 F.2d 927, 935 (D.C.Cir.1979); Investment Co. Institute v. Board of Governors of the Federal Reserve System, 551 F.2d 1270, 1278-79 (D.C.Cir.1977). See also Whitney National Bank v. Bank of New Orleans & Trust Co., 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965) (where Congress has enacted a specific statutory scheme of review, the statutory mode must be adhered to notwithstanding the absence of an express statutory command of exclusiveness). By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power. It would be anomalous to hold that this grant of authority only strips the District Court of general federal question jurisdiction under 28 U.S.C. Sec. 1331 (1982) when the Circuit Court has present jurisdiction under a special review statute, but not when the Circuit Court has immediate jurisdiction under the All Writs Act in aid of its future statutory review power.[32]
 
 
 18
 The District Court also lacks jurisdiction under both the All Writs Act, 28 U.S.C. 1651(a) and the mandamus statute, 28 U.S.C. Sec. 1361 (1982). The All Writs Act is not an independent grant of jurisdiction to a court; it merely permits a court to issue writs in aid of jurisdiction acquired to grant some other form of relief. See Stern v. South Chester Tube Co., 390 U.S. 606, 608, 88 S.Ct. 1332, 1333, 20 L.Ed.2d 177 (1968); Covington & Cincinnati Bridge Co. v. Hager, 203 U.S. 109, 110, 27 S.Ct. 24, 51 L.Ed. 111 (1906). Because the District Court has no present or future jurisdiction over agency actions assigned by statute to appellate court review, it can contemplate no exercise of jurisdiction that mandamus might aid.[33] The mandamus statute, 28 U.S.C. Sec. 1361 also fails to confer jurisdiction on the District Court to compel agency action. Mandamus is an extraordinary remedy that is not available when review by other means is possible. See, e.g., Kerr v. United States District Court, 426 U.S. 394, 403, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976); Council of and for the Blind v. Regan, 709 F.2d 1521, 1533 (D.C.Cir.1983); In re Halkin, 598 F.2d 176, 198 (D.C.Cir.1979); Cartier v. Secretary of State, 506 F.2d 191, 199 (D.C.Cir.1974), cert. denied, 421 U.S. 947, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). Because review is available in the Court of Appeals under the special review statute and the All Writs Act, action by the District Court under section 1361 is not.
 
 
 19
 Nor is district court review permissible here under section 703 of the APA, which provides for district court review when statutory review is inadequate.[34] Where statutory review is available in the Court of Appeals it will rarely be inadequate. We find untenable any suggestion that appellate review of nonfinal agency action may be inadequate due to Courts of Appeals' inability to take evidence.[35] This precise argument was recently rejected by the Supreme Court in ITT, where the Court held that, if an agency record is insufficient, the Court of Appeals may either remand the record to the agency for further development or appoint a special master under 28 U.S.C. Sec. 2347(b)(3). ITT, 104 S.Ct. at 1940.[36]
 
 
 20
 Furthermore, there are compelling policy reasons for holding that the jurisdiction of the Court of Appeals is exclusive. Appellate courts develop an expertise concerning the agencies assigned them for review. Exclusive jurisdiction promotes judicial economy and fairness to the litigants by taking advantage of that expertise. In addition, exclusive jurisdiction eliminates duplicative and potentially conflicting review, Investment Co. Institute, 551 F.2d at 1279, and the delay and expense incidental thereto.
 
 
 21
 There may be a small category of cases in which the underlying claim is not subject to the jurisdiction of the Court of Appeals (and thus adjudication of the claim in the District Court will not affect any future statutory review authority of the Circuit Court). In such cases, where a denial of review in the District Court will truly foreclose all judicial review, district court review might be predicated on the general federal question jurisdiction statute, 28 U.S.C. Sec. 1331. For example, in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the Supreme Court held that, even though there is a statutory prohibition against review of representation orders of the National Labor Relations Board, a District Court has jurisdiction under section 1331 in the very limited circumstance where the Board has clearly violated an express mandate of the statute and the plaintiff has no alternative means of review. See Hartz Mountain Corporation v. Dotson, 727 F.2d 1308, 1311-12 (D.C.Cir.1984). However, we need not tarry over this narrow exception because it is in no way implicated in the case before us. The principal point of this decision is to make clear that where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals.[37]
 
 III. MERITS OF THE UNREASONABLE DELAY CLAIM
 
 22
 As we have noted above, there is no doubt that this court has present jurisdiction to hear claims concerning nonfinal agency action (or inaction) that might affect our future statutory review of final agency action. Nevertheless, given the clear legislative preference for review of final action, we must be circumspect in exercising jurisdiction over interlocutory petitions. Postponing review until relevant agency proceedings have been concluded "permits an administrative agency to develop a factual record, to apply its expertise to that record, and to avoid piecemeal appeals." Association of National Advertisers v. FTC ("National Advertisers"), 627 F.2d 1151, 1156 (D.C.Cir.1979) (Tamm, J.) (citing McKart v. United States, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969)), cert. denied, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980). Accordingly, we have found the threshold a litigant must pass to obtain judicial review of ongoing agency proceedings to be a high one. Id.[38] As Judge Leventhal emphasized in National Advertisers, "[o]nly in rare instances is a non-final agency action reviewed in the teeth of a general denial of jurisdiction." 627 F.2d at 1178 (concurring opinion). Thus, we generally will hear only cases of " 'clear right' such as outright violation of a clear statutory provision ... or violation of basic rights established by a structural flaw, and not requiring in any way a consideration of the interrelated aspects of the merits ...." Id. at 1180 (emphasis omitted).
 
 
 23
 Claims of unreasonable agency delay clearly fall into that narrow class of interlocutory appeals from agency action over which we appropriately should exercise our jurisdiction. It is obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action. Agency delay claims also meet Judge Leventhal's suggested criteria for our interlocutory intervention--not only is there an outright violation of 5 U.S.C. Sec. 555(b)'s mandate that agencies decide matters in a reasonable time, there also is no need for the court to consider the merits of the issue before the agency. Finally and most significantly, Congress has instructed statutory review courts to compel agency action that has been unreasonably delayed. 5 U.S.C. Sec. 706(1).[39]
 
 
 24
 In the context of a claim of unreasonable delay, the first stage of judicial inquiry is to consider whether the agency's delay is so egregious as to warrant mandamus. Although this court has decided several cases involving claims of unreasonable delay, see, e.g., PCHRG v. FDA, 740 F.2d 21 (D.C.Cir.1984); Public Citizen Health Research Group v. Auchter, 702 F.2d 1150 (D.C.Cir.1983); PEPCO, 702 F.2d 1026 (D.C.Cir.1983); MCI Telecommunications Corp. v. FCC ("MCI"), 627 F.2d 322 (D.C.Cir.1980); Nader v. FCC, 520 F.2d 182 (D.C.Cir.1975), we have not articulated a single test for when the writ should issue. On reading these cases together, however, one can discern the hexagonal contours of a standard. Although the standard is hardly ironclad, and sometimes suffers from vagueness, it nevertheless provides useful guidance in assessing claims of agency delay: (1) the time agencies take to make decisions must be governed by a "rule of reason," PEPCO, 702 F.2d at 1034; MCI, 627 F.2d at 340; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, PCHRG v. FDA, 740 F.2d at 34-35; PCHRG v. Auchter, 702 F.2d at 1158, n. 30; PEPCO, 702 F.2d at 1034; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; PCHRG v. FDA, 720 F.2d at 34; PCHRG v. Auchter, 702 F.2d at 1157; see also Blankenship v. Secretary of Health, Education, and Welfare, 587 F.2d 329, 334 (6th Cir.1978); (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority, see, e.g., PCHRG v. FDA, 740 F.2d at 34; PCHRG v. Auchter, 702 F.2d at 1158; (5) the court should also take into account the nature and extent of the interests prejudiced by delay, PCHRG v. FDA, 740 F.2d at 35; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.' " PCHRG v. FDA, 740 F.2d at 34.
 
 
 25
 Because, in the instant case, the FCC has assured us that it is moving expeditiously on both overcharge claims, we need not test the delay here against the above standard to determine if it is egregious enough to warrant mandamus. But in light of the Commission's failure to meet its self-declared prior deadlines for these proceedings, we believe these delays are serious enough for us to retain jurisdiction over this case until final agency disposition.
 
 In MCI we announced that:
 
 26
 the entire ratemaking procedure in the 1934 Communications Act revolves around a "rule of reason" .... It assumes that rates will be finally decided within a reasonable time encompassing months, occasionally a year or two, but not several years or a decade ....
 
 
 27
 Complex regulation must still be credible regulation; the delay at issue here threatens the FCC's credibility .... Many of the same considerations that impel judicial protection of the right to a "speedy trial" in criminal cases or implementation of civil decrees with all deliberate speed are not inapposite in agency deliberations. Those situations generally involve protection of constitutional rights, but delay in the resolution of administrative proceedings can also deprive regulated entities, their competitors or the public of rights and economic opportunities without the due process the Constitution requires.
 
 
 28
 627 F.2d at 340-41 (footnotes omitted).[40] In that case we found a four year delay to be unreasonable.[41] We observed that unless there was "some limit to the time tariffs unjustified under the law can remain in effect ... the regulatory scheme Congress has crafted becomes anarchic and whatever tariff rates the 'regulated' entity files become, for all practical purposes, the accepted rates." Id. at 325. In the instant case, the FCC has delayed almost five years on the rate of return inquiry and nearly two years on the proper ratemaking treatment of Western Electric's CPE development expenses. These delays have permitted AT & T's allegedly excessive returns to "become for all practical purposes, the accepted" ones. Even the agency recognizes, at least with regard to the rate of return delay, that "an unfortunately long time has elapsed since [this] matter first appeared."[42] Whether or not these delays would justify mandamus, we believe they clearly warrant retaining jurisdiction.
 
 IV. CONCLUSION
 
 29
 In accordance with the foregoing opinion, we order that the court's mandate shall issue immediately and that within 30 days from the issuance of this decision the FCC shall inform this court of the dates by which the agency anticipates resolution of both refund disputes.[43] Every 60 days thereafter, the FCC shall advise the court of its progress in these matters. Prior to final agency orders, any party may petition this court to take additional appropriate action as may be warranted.[44]
 
 
 
 [1]
 Customer premises equipment includes "all equipment provided by common carriers and located on customer premises except over voltage protection equipment, inside wiring, coin operated or pay telephones and multiplexing equipment to deliver multiple channels to the customers." American Telephone & Telegraph Co. ("AT & T Capitalization Request"), 91 F.C.C.2d 578, 579, n. 2 (1982), petition for review pending sub nom. GTE Service Corp. v. FCC, No. 84-4090 (2d Cir. filed June 15, 1984)
 
 
 [2]
 American Telephone & Telegraph Co., 57 F.C.C.2d 960, 973 (1976)
 
 
 [3]
 Id
 
 
 [4]
 American Telephone & Telegraph Co., 58 F.C.C.2d 1, 4 (1976)
 
 
 [5]
 Brief for Intervenor American Telephone and Telegraph Co. ("Brief for AT & T") 5
 
 
 [6]
 Brief for AT & T 6, Petitioners' Brief Supporting Petition for Mandamus and Petition for Review ("Petitioners' Brief") 4-5
 
 
 [7]
 In Matter AT & T's Earnings on Interstate and Foreign Services During 1978: Notice of Inquiry, 75 F.C.C.2d 412, 413-14 (Adopted September 18, 1979; Released October 1, 1979)
 
 
 [8]
 Hearings on Implementation of the Nippon Telephone and Telegraph Procurement Agreement, June 9, 1981; Licensing of VHF Television Stations in New Jersey and Delaware--H.R. 2128, June 16, 1981; FCC Oversight, July 23, 1981; Cable Franchise Investigation, July 28, 1981, Before The Subcommittee on Telecommunications, Consumer Protection and Finance of the Committee on Energy and Commerce, House of Representatives, 97th Cong., 1st Sess. 481-82 (1981)
 
 
 [9]
 Petitioners' Brief, Appendix
 
 
 [10]
 Letter from Daniel Armstrong, FCC Associate General Counsel, to this court (September 12, 1984)
 
 
 [11]
 "Enhanced services," as opposed to basic transmission services are those "which employ computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information; provide the subscriber additional, different, or restructured information; or involve subscriber interaction with stored information." 47 C.F.R. Sec. 64.702(a) (1982)
 
 
 [12]
 See Second Computer Inquiry ("Computer II"), 77 F.C.C.2d 384 (1980), aff'd sub nom. Computer and Communications Industry Ass'n v. FCC, 693 F.2d 198 (D.C.Cir.1982), cert. denied sub nom. Louisiana Public Service Comm'n v. FCC, 103 S.Ct. 2109 (1983)
 
 
 [13]
 47 U.S.C. Sec. 201-224 (1982)
 
 
 [14]
 Computer II, 77 F.C.C.2d at 474; Computer and Communications Industry Ass'n v. FCC, 693 F.2d at 205, n. 22; 208, 211
 
 
 [15]
 Computer II, 77 F.C.C.2d at 467, 476-487
 
 
 [16]
 AT & T Capitalization Request, 91 F.C.C.2d at 581, 604-07
 
 
 [17]
 Id. at 607
 
 
 [18]
 Petitioners' Brief 11
 
 
 [19]
 Petitioners' Brief 12
 
 
 [20]
 Petitioners' Brief, Appendix
 
 
 [21]
 Letter from Daniel Armstrong, supra note 10
 
 
 [22]
 Although the parties have not contested our jurisdiction over the petitioners' suit, we requested them, as well as the parties to Air Line Pilots Ass'n, International v. CAB (ALPA), 750 F.2d 81, wherein a claim of unreasonable agency delay was filed initially in the District Court, to address in their briefs and arguments "whether a petition to compel allegedly unreasonably delayed agency action properly lies before this Court or before a United States District Court, or whether those courts have concurrent jurisdiction, when any final agency decision in the matter would be directly reviewable in this Court." Order No. 84-1035 (D.C.Cir. June 12, 1984)
 Because ALPA and the instant case raise identical jurisdictional issues, we treat them as companion cases. For the sake of economy, our discussion of these jurisdictional issues is dispositive for both ALPA and this case.
 
 
 [23]
 Compare, e.g., Association of Nat'l Advertisers v. FTC ("National Advertisers"), 627 F.2d 1151, 1157 (D.C.Cir.1979), cert. denied, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) (holding that the District Court had general federal question jurisdiction under 28 U.S.C. Sec. 1331 over nonfrivolous constitutional claims of agency bias and prejudgment); Public Citizen Health Research Group v. Comm'r, Food & Drug Administration ("PCHRG v. FDA"), 740 F.2d 21, 34-35 (D.C.Cir.1984) (original jurisdiction of District Court not questioned, Court of Appeals remands to District Court for further evidence); Public Citizen Health Research Group v. Auchter, 702 F.2d 1150 (D.C.Cir.1983) (original jurisdiction of District Court not questioned), with Potomac Electric Power Co. v. ICC ("PEPCO"), 702 F.2d 1026, 1032-33 (D.C.Cir.1983) (initially brought in Court of Appeals, jurisdiction upheld); MCI Telecommunications Corp. v. FCC, 627 F.2d 322 (D.C.Cir.1980) (initially brought in Court of Appeals, jurisdiction not questioned); National Advertisers, 627 F.2d at 1179 (Leventhal, J., concurring) (jurisdiction to compel agency action lies exclusively in the appellate court that has jurisdiction to review on the merits); Environmental Defense Fund, Inc. v. Hardin, 428 F.2d 1093, 1098-99 (D.C.Cir.1970) (holding that Court of Appeals has jurisdiction where administrative inaction is the equivalent of an order denying relief). See also Action for Children's Television v. FCC, 546 F.Supp. 872, 874-75 (D.D.C.1982) (holding in favor of jurisdiction in Court of Appeals, not District Court)
 
 
 [24]
 Because this holding resolves inconsistencies among our prior decisions, this part of our decision has been considered separately and approved by the whole court, and thus constitutes the law of the circuit. See Irons v. Diamond, 670 F.2d 265, 268 n. 11 (D.C.Cir.1981)
 
 
 [25]
 Section 2342(1) provides that: "The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of--
 (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47 ...."
 
 
 [26]
 Section 402(a) makes reviewable "[a]ny proceeding to enjoin, set aside, annul or suspend any order of the Commission under this Act (except those appealable under subsection (b) of this section) ...."
 47 U.S.C. Sec. 402(b) (1982) narrows review jurisdiction over certain agency actions even further. It provides that certain agency proceedings, not at issue in this case, are appealable only in the Court of Appeals for the District of Columbia.
 
 
 [27]
 Although the finality doctrine does limit judicial action, it does not do so in a precise and inflexible way. As the Supreme Court has instructed in Abbot Laboratories v. Gardner, 387 U.S. 136, 149-50, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967), a federal court should apply the finality requirement in a "flexible" and "pragmatic" way. See also PCHRG v. FDA, 740 F.2d at 30. In PCHRG we found that the finality requirement does not preclude us from reviewing claims of unreasonable agency delay. Id. at 30-32
 
 
 [28]
 The authority of an appellate court to issue mandamus to an agency is analogous to its authority to issue the writ to District Courts. See, e.g., National Advertisers, 627 F.2d at 1179 (Leventhal, J., concurring)
 The Supreme Court has long recognized the authority of appellate courts to compel district court action through mandamus. See, e.g., McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910) (Court of Appeals could issue a writ of mandamus compelling a Circuit Court to proceed where, pending a decision in state court, the Circuit Court had stayed a proceeding before it, possibly preventing the adjudication of the issues in federal court and thus interfering with the Court of Appeal's potential review of the Circuit Court's determinations); Ex Parte Bradstreet, 32 U.S. (7 Pet.) 634, 8 L.Ed. 810 (1833) (ordering lower court judge to reinstate, try, and decide a case to ensure that the party before it could exercise her subsequent right to judgment by the Supreme Court); Ex Parte Crane, 30 U.S. (5 Pet.) 190, 191, 8 L.Ed. 92 (1831) (noting that Blackstone believed the writ of mandamus " 'issues to the judges of any inferior court, commanding them to do justice, according to the powers of their office, whenever the same is delayed.' ").
 
 
 [29]
 Cf. PEPCO, 702 F.2d at 1032-33 (premising appellate jurisdiction over claims of unreasonable agency delay on a slightly different rationale--postponement of an unreasonable delay claim until after the agency's decision may render it moot and deprive the Court of Appeals of the opportunity to review the delay claim, thus permitting present review under the All Writs Act)
 
 
 [30]
 See National Advertisers, 627 F.2d at 1179 (Leventhal, J., concurring). Past suggestions that the District Court has general federal question jurisdiction under 28 U.S.C. Sec. 1331 over some of these claims were in error. See, e.g., National Advertisers, 627 F.2d at 1157 (statement that the District Court had jurisdiction over agency bias claim); PCHRG v. FDA, 740 F.2d at 34-35 (court tacitly upheld jurisdiction of District Court by remanding for further evidence)
 
 
 [31]
 See supra notes 25-26 and accompanying text
 
 
 [32]
 See Note, Jurisdiction to Review Federal Administrative Action: District Court or Court of Appeals, 88 HARV.L.REV. 980, 983 (1975) ("[t]he rule of exclusivity is [best] justified as promoting the purposes for which Congress adopts special review statutes.")
 
 
 [33]
 As we said once, in the context of our own jurisdiction under the All Writs Act "[w]e have no appellate jurisdiction over the instant case, past, present, or future, which mandamus could 'aid.' Therefore we lack jurisdiction to issue the writ." In re Stone, 569 F.2d 156, 157 (D.C.Cir.1978). The same is true of the District Court in this case
 
 
 [34]
 That section reads in pertinent part:
 The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute, or in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibatory or mandatory injunction ... in a court of competent jurisdiction.
 5 U.S.C. Sec. 703 (1982).
 
 
 [35]
 See, e.g., PCHRG v. FDA, 740 F.2d at 34-35
 
 
 [36]
 Although ITT dealt with final agency action and thus is not fully dispositive of the case at hand, we find its reasoning persuasive and follow it here. It would be highly anomalous for us to hold that remand to the agency or appointment of a special master cannot cure evidence deficiencies in the record of ongoing agency proceedings when the Supreme Court has said they are quite adequate for review of the same issues after final agency order
 
 
 [37]
 We recognize that, because the precedent in this circuit may have implied that the District Court has concurrent jurisdiction over claims concerning nonfinal agency action, a number of suits mistakenly may have been filed in the District Court. We assume that, rather than dismiss these suits for want of jurisdiction, the District Court will transfer them to this court under 28 U.S.C. Sec. 1631 (1982). Section 1631 reads:
 Whenever a civil action is filed in a court as defined in section 610 of this title [28 USCS Sec. 610] or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.
 
 
 [38]
 Although the reasoning in National Advertisers was based on an exhaustion doctrine analysis, it is largely applicable to the finality doctrine
 
 
 [39]
 In Costle v. Pacific Legal Foundation, the Supreme Court noted that judicial review of prolonged agency inaction may be obtained under this section of the APA. 445 U.S. 198, 220 n. 14, 100 S.Ct. 1095, 1108 n. 14, 63 L.Ed.2d 329 (1980)
 
 
 [40]
 We believe that this statement, although made in the context of review of tariff revisions under 47 U.S.C. Sec. 204 (1982), applies to all aspects of the ratemaking process, including the proceedings at issue here
 
 
 [41]
 In 1976 the FCC had found AT & T's WATS' tariff revisions to be unsupported by the data AT & T had produced, but continued the effectiveness of these revisions pending final FCC action. By 1980, when this court heard MCI's complaint of unreasonable delay, the agency still had not completed the proceedings. 627 F.2d at 324-25
 
 
 [42]
 Brief for FCC 24
 
 
 [43]
 On October 12, 1984, the FCC informed this court by letter that it anticipates resolution of the rate of return matter on or before November 30, 1984, and of the treatment of CPE expenses on or before June 28, 1985. See, supra notes 10 & 21 and accompanying text. In light of the facts before us on this petition and the Commission's explanations, we are not convinced that the latter date is reasonable. We suspect that the agency could easily conclude the CPE proceedings several months earlier, but the evidence currently before us is insufficient to permit a firm determination. This insufficiency should be cured by the agency's reports to this court. If the FCC adheres to the June 28, 1985 deadline, it should explain in its first report (thirty days from the issuance of this opinion) why resolution of this matter requires almost three years to complete (taking as the beginning date November 10, 1982, when the Commission first asked AT & T for more information). If the petitioners are unpersuaded by the FCC's explanations, they may request this court to order an earlier resolution
 
 
 [44]
 We wish to make clear our understanding that the relief we grant here is in no way precluded by the Supreme Court's recent decision in Heckler v. Day, --- U.S. ----, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984). In Heckler the Court struck down a broad injunction by the United States District Court for the District of Vermont which ordered the Secretary of Health and Human Services to conclude reconsideration of social security disability benefit claims and to issue reconsideration decisions within a specified time period set by the District Court. Based on a review of legislative history, the Court found that Congress had deliberately declined to impose deadlines on this administrative process and that in view of this unmistakable Congressional intent it would be an unwarranted judicial intrusion for federal courts to issue injunctions imposing across-the-board deadlines for future disability claims. Id. 2253, 2258. The Court made clear, however, that it was not prohibiting the proper use of injunctive relief to remedy individual claims. Id. at 2258, n. 33. In the instant proceeding, we adjudicate an individual case and fashion a remedy for the specific instances presented by this case. At this time, all we require is that the FCC fulfill its promise of expeditious treatment of the petitioners' claims and keep this court informed of its progress