Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued October 31, 2003      Decided February 20, 2004

No. 02-1356

INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA,
PETITIONER

v.

UNITED STATES DEPARTMENT OF LABOR,
MINE SAFETY AND HEALTH ADMINISTRATION,
ELAINE CHAO, SECRETARY OF LABOR, AND
DAVE LAURISKI, ASSISTANT SECRETARY OF LABOR FOR
MINE SAFETY AND HEALTH,
RESPONDENTS

---

On Petition for Review of an Order of the
Mine Safety and Health Administration

---

*Judith Rivlin* argued the cause for petitioner. With her on the brief was *Grant Crandall.*

*Ellen L. Beard,* Senior Appellate Attorney, U.S. Department of Labor, argued the cause for respondents. With her

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

on the brief were *Allen H. Feldman*, Associate Solicitor of Labor, and *Nathaniel I. Spiller*, Deputy Associate Solicitor. *Mark S. Flynn*, Attorney, entered an appearance.

Before: GINSBURG, *Chief Judge*, GARLAND, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The United Mine Workers of America petitions for review of a final decision of the Mine Safety and Health Administration (MSHA), a component of the Department of Labor, to withdraw its proposed Air Quality rule. The Union argues the agency's action was contrary to the Federal Mine Safety and Health Act of 1977, 30 U.S.C. § 811, and arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Because we conclude the MSHA failed to provide an adequate explanation for its decision, we grant the Union's petition and remand this matter to the agency for further proceedings.

## I. Background

The Mine Safety and Health Act authorizes the Secretary of Labor to promulgate health standards "dealing with toxic materials or harmful physical agents" in order to protect miners from any "material impairment of health or functional capacity." 30 U.S.C. § 811(a)(6)(A). Pursuant to this authority, in 1989 the MSHA proposed a comprehensive rule that would: (1) "establish lists of hazardous substances that may adversely affect health and . . . require control of exposure to such substances"; (2) "establish permissible exposure limits [PELs] and delineate the methods and frequency of monitoring to evaluate exposure"; and (3) "revise requirements for respiratory protection programs for metal/nonmetal mines and establish similar requirements for coal mines." Air Quality, Chemical Substances, and Respiratory Protection Standards, Proposed Rule, 54 Fed. Reg. 35760, 35761/2 (Aug. 29, 1989). The rule would have, among other things, established PELs for more than 600 chemical substances that might be present in a mine, 165 of which substances would

have been regulated for the first time. *See id.* at 35766/3, Table 2. As explained in the proposal:

> The effect of these substances may range from allergic reactions to systemic toxicity. Some of them are capable of causing cancers, central and peripheral neuropathies, lung disease, liver and kidney damage, birth defects, and other systemic effects.

54 Fed. Reg. at 35761/1.

When it proposed the rule, the MSHA "believe[ed] that the health evidence form[ed] a reasonable basis for proposing revisions to [current exposure] levels." *Id.* Accordingly, the agency conducted public hearings, solicited and received comments, and in 1994 adopted one phase of the rule. *See* Air Quality: Health Standards for Abrasive Blasting and Drill Dust Control, Final Rule, 59 Fed. Reg. 8318 (Feb. 18, 1994), codified at 30 C.F.R. §§ 58.610–.620, 72.610–.630; *see also* Air Quality Proposed Rule, 54 Fed. Reg. at 35776/1–77/1.

In September 2002, however, the MSHA decided to withdraw the remainder of the proposed rule. 67 Fed. Reg. 60611 (Sept. 26, 2002). By way of explanation, the agency said its decision to withdraw the proposed rule "was the result of changes in agency priorities and the possible adverse effect . . . of the decision in *AFL-CIO et. al. v. OSHA*," *id.* at 60611/2, in which the Eleventh Circuit had invalidated an OSHA rule that set new PELs for 428 toxic substances, *see* 965 F.2d 962 (1992). The MSHA also noted it had been "more than 13 years since the proposal was published and more than 12 years since the comments were received." 67 Fed. Reg. at 60611/2.

## II. Analysis

The Union first argues the MSHA's withdrawal of the proposed Air Quality rule was contrary to the Mine Safety and Health Act. We review the MSHA's interpretation of the Act according to the familiar standards in *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984). The Union also contends the MSHA's action

4

was arbitrary and capricious, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

A. Jurisdiction

We note at the outset that the source of our jurisdiction to entertain the Union's petition, though the parties did not question it, is far from obvious. We therefore raised the issue ourselves and directed the parties to address it at oral argument. *See Citizens for Abatement of Aircraft Noise, Inc. v. Metro. Wash. Airports Auth.*, 917 F.2d 48, 53 (D.C. Cir. 1990) ("a court of appeals must first satisfy itself of its own jurisdiction, *sua sponte* if necessary, before proceeding to the merits").

The Mine Safety and Health Act grants the court of appeals jurisdiction to entertain challenges only to any "mandatory health or safety standard promulgated under" the Act. 30 U.S.C. § 811(d).* The Union's petition, however, challenges the withdrawal, rather than the promulgation, of a proposed rule; the Act does not grant this court jurisdiction to review such a challenge. It is equally clear the APA does not confer jurisdiction upon this (or any) court. *See Califano v. Sanders*, 430 U.S. 99, 104–05 (1977) (holding the APA does not "provide a distinct basis of jurisdiction").

Under the All Writs Act, 28 U.S.C. § 1651(a), however, we have the authority to compel agency action unreasonably withheld or delayed if the putative agency action, once forthcoming, would be reviewable in this Court. *See Telecomm. Research & Action v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) (*TRAC*); *Oil, Chemical & Atomic Workers Int'l Union v.*

---

* 30 U.S.C. § 811(d) reads in relevant part:

Any person who may be adversely affected by a mandatory health or safety standard promulgated under this section may, at any time prior to the sixtieth day after such standard is promulgated, file a petition challenging the validity of such mandatory standard with the United States Court of Appeals for the District of Columbia Circuit or the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

*Zegeer*, 768 F.2d 1480, 1483–85 (D.C. Cir. 1985) (*OCAW*) (asserting jurisdiction pursuant to *TRAC* to entertain claim of unreasonable delay by MSHA). As we stated the matter in *TRAC*: "Because the statutory obligation of a Court of Appeals to review on the merits may be defeated by an agency that fails to resolve disputes, a Circuit Court may resolve claims of unreasonable delay in order to protect its future jurisdiction." 750 F.2d at 76.

This case, however, does not fall squarely under any circuit precedent because it is not a claim of unreasonable delay. *See id.* at 74; *OCAW*, 768 F.2d at 1485. The logic of *TRAC* nonetheless supports our jurisdiction over the present case: like the unreasonable delay in promulgating a rule alleged in *OCAW*, the withdrawal of a proposed rule defeats this Court's prospective jurisdiction. As in *TRAC* and *OCAW*, therefore, we may properly exercise jurisdiction in order "to support [our] ultimate power of review, even though it is not immediately and directly involved" at this time. *TRAC*, 750 F.2d at 76.

Because the Mine Safety and Health Act expressly provides for review of promulgated standards in the court of appeals, one might infer that the court of appeals is without jurisdiction to review the Secretary's decision not to promulgate a standard. If § 811(d) were construed by negative implication to preclude such review in the court of appeals, however, then an adversely affected party would have to seek review of the agency's action, if at all, in the district court, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). It would be anomalous, however, for the district court to review claims of arbitrary and capricious withdrawal while the court of appeals entertains claims of unreasonable delay, considering that the latter type of claim is at least as likely as the former to involve issues of fact. Our jurisdiction over claims of delay having been established in *TRAC*, that is, our authority to hear the Union's claim that the proposed rule was unlawfully withdrawn seems to follow as a necessary implication. And so to the merits.

B. Statutory Authority

The Union first argues the MSHA's decision to withdraw the proposed rule was contrary to the Mine Safety and Health Act itself: "once the Secretary identified the need to promulgate an air quality rule, she had the affirmative duty to complete it." This argument need not detain us long, for it is perfectly clear the Secretary may withdraw a proposed "health or safety standard [if he] publish[es] his reasons for his determination" not to promulgate it. 30 U.S.C. § 811(a)(4)(C). Thus, the Congress "has directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, and we are bound to "give effect to [its] unambiguously expressed intent," *id.* at 843, with the result that the Union's first argument fails.

C. The Administrative Procedure Act

The Union next argues the MSHA's decision to withdraw its proposed rule was not a reasoned one. We review the agency's action under the deferential "arbitrary and capricious" standard of the APA. *See Nat'l Mining Ass'n v. MSHA*, 116 F.3d 520, 527 (D.C. Cir. 1997). In applying this standard, we give more deference to an agency's decision to withdraw a proposed rule than we give to its decision to promulgate a new rule or to rescind an existing one. *See Williams Natural Gas Co. v. FERC*, 872 F.2d 438, 443–44 (D.C. Cir. 1989).

Although the MSHA's publication of the proposed Air Quality rule certainly did not obligate it to adopt that rule (or, for that matter, any rule), the agency "was not free to terminate the rulemaking for no reason whatsoever." *Id.* at 446. Because "[t]he grounds upon which an administrative action must be judged are those upon which the record discloses that [the] action was based," *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("*Chenery I*"), the MSHA must "provide an explanation that will enable the court to evaluate [its] rationale at the time of the decision." *Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990); *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("*Chenery II*") ("a reviewing court . . . must judge the propriety of

[agency] action solely by the grounds invoked by the agency," and "that basis must be set forth with such clarity as to be understandable"). Here the MSHA fell short of its obligation.

The MSHA purported to rest its decision upon three seemingly independent grounds: a "change in agency priorities"; the "possible adverse effect" of *AFL-CIO v. OSHA*, 965 F.2d 962 (11th Cir. 1992); and the staleness of the record. The MSHA's statement that there was a "change in agency priorities," without explanation, is not informative in the least; it is merely a reiteration of the decision to withdraw the proposed rule. As for the staleness of the record, that is reason enough for an agency to hesitate before promulgating a proposed rule, but not for abandoning it altogether: "If [the agency] regarded the information in its record as out-of-date, then it might more reasonably have chosen to supplement the record rather than terminate the docket." *Williams*, 872 F.2d at 449.

We are left with the MSHA's claim that, in the wake of *AFL-CIO v. OSHA,* "a comprehensive approach to rulemaking" is "no longer a viable means" of addressing the health risks it had sought to remedy with the proposed Air Quality rule.* 67 Fed. Reg. at 60611/2. In *AFL-CIO v. OSHA*, the MSHA explained, the court of appeals invalidated an OSHA rule because the agency had "not met its statutory burden in establishing the PELs for each of the 428 contaminants regulated by the standard." *Id.* The case is indeed a caution for an agency embarking upon the regulation of exposure to numerous substances. That is why the MSHA, in 1996, said it was "exploring issuing the final [Air Quality] rule in phases"; at that time it apparently believed it could thereby meet the requirements elaborated by the Eleventh Circuit. Dep't of Labor (Mine Safety & Health Administration) Unified

---

* We do not express an opinion with regard to whether "a comprehensive approach to rulemaking" is still viable in light of *AFL-CIO v. OSHA. Cf. Troy Corp. v. Browner,* 120 F.3d 277 (D.C. Cir. 1997) (distinguishing *AFL-CIO* and upholding most of EPA rule adding 286 substances to the Toxic Release Inventory).

Agenda, 61 Fed. Reg. 23261/3 (May 13, 1996). Yet, in later withdrawing the proposed Air Quality rule, the MSHA did not explain why it came to deem the Eleventh Circuit decision fatal to that effort. Nor did the agency address certain data submitted by the American Conference of Governmental Industrial Hygienists (ACGIH), which the Union suggests would have aided the agency in crafting a rule that met the Eleventh Circuit's standard.

Even if the agency had not raised the possibility of going forward in a manner designed to cope with the decision of the Eleventh Circuit, however, we would still have to remand this matter to the agency for further consideration. Two of the three reasons it gave still would not support its decision, and we do not know—nor are we free to guess—what the agency would have done had it realized that it could not justify its decision by conclusorily asserting that agency priorities had changed or by observing that the record had become stale. *See Chenery I*, 318 U.S. at 88 ("If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment").

In sum, the MSHA failed to provide an adequate explanation for its decision to withdraw the Air Quality proposal. Absent such an explanation, the agency's action was arbitrary and capricious.

### III. Conclusion

For the foregoing reasons, we grant the Union's petition for review and remand this matter to the Mine Safety and Health Administration so that it may either proceed with the Air Quality rulemaking or give a reasoned account of its decision not to do so.

*So ordered.*