<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 06a0616n.06
Filed: August 22, 2006

**No. 05-5419**


**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ITC^DELTACOM   COMMUNICATIONS,
INC.,

     **Plaintiff-Appellant,**

v.

BELLSOUTH   TELECOMMUNICATIONS,
INC., and FEDERAL COMMUNICATIONS
COMMISSION,

     **Defendants-Appellees.**

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE**

                              /


**BEFORE:**    **MOORE, CLAY, and GRIFFIN, Circuit Judges.**

    **CLAY, Circuit Judge.**  Plaintiff, ITC^DeltaCom Communications, Inc. ("ITC"), appeals

the district court's grant of Defendants BellSouth Telecommunications, Inc. ("Bellsouth"), and the

Federal Communications Commission's ("FCC") motions to dismiss Plaintiff's complaint for lack

of subject matter jurisdiction.

    For the reasons set forth below, we **AFFIRM** the district court's order.

I.

    This case arises out of what the magistrate judge aptly described as "another skirmish in a

long running battle between ITC and Bellsouth over interconnecting rates for the ability of ITC to

use some of Bellsouth's existing equipment." (J.A. at 92.) The relevant statutory and regulatory framework and relevant background information is briefly recounted below.

1.      *Statutory and Regulatory Background*

There are a number of statutes and regulations that are important in the present case. Primary among them is the Telecommunications Act of 1996 ("Act"), Pub. L. No. 104-104, 110 Stat. 56, which was enacted by Congress "to promote competition in all telecommunications markets, including the local service market." *MCI Telecomms. Corp. v. Ohio Bell Tel. Co.*, 376 F.3d 539, 542 (6th Cir. 2004). The Act prescribes a general duty of all telecommunications carriers to "interconnect directly or indirectly with facilities and equipment of other telecommunications carriers," 47 U.S.C. § 251(a)(1); and incumbent local exchange carriers ("ILECs"), have a duty to negotiate interconnection agreements in good faith with competitors seeking to enter their markets. 47 U.S.C. § 251(c)(1)-(6). These competitors are known as Competitive Local Exchange Carriers ("CLEC").

Under these provisions of the Act, ILECs and new entrants into the telecommunications market are required to negotiate in good faith to reach interconnection agreements, but if the ILECs and CLECs cannot reach an agreement, then they are subject to compulsory arbitration with the state regulatory commission. Once an agreement is reached, it must be approved by the same state regulatory commission. There are time limits for a state regulatory commission to act on an interconnection agreement, and provisions that the FCC may act to approve interconnection agreements when the state regulatory commission fails to act. 47 U.S.C. § 252(e)(2) and (4)-(5).

The state commission's final decision is reviewable in federal district court for compliance with the Act's requirements.   *See* 47 U.S.C. § 252(e)(6).

In addition to its obligations under §251, the Act also establishes similar and sometimes overlapping network sharing obligations for Bell Operating Companies[1] ("BOCs ") seeking to provide long-distance service within their local service areas.  Under 47 U.S.C. § 271, BOCs are required, among other things, to provide "local switching unbundled from transport, local loop transmission, or other services."  47 U.S.C. § 271(c)(2)(B)(vi).  The rates for BOCs that satisfy this obligation are governed by the "just and reasonable" standard set forth in 47 U.S.C. § 201(b).  The underlying dispute between ITC and Bellsouth concerns the pricing of local switching that Bellsouth provides to ITC, pursuant to § 271 of the Act.

### 2.   *Dispute Between the Parties*

Plaintiff and Defendant BellSouth are two competitors in the Tennessee telecommunications market.  The two companies were negotiating over the terms of an interconnection agreement but could not agree on local switching rates.  The matter was submitted to compulsory arbitration before the Tennessee Regulatory Authority ("TRA").  The TRA's arbitration decision announced an interim rate for the leasing of switching under § 271 of the Act.  The TRA announced this rate as an oral order, with a final order to follow.  Neither party has informed has informed this Court of any final order that has been issued by the TRA, and thus no appeal is presently possible of the TRA's decision to the district court, since parties may only seek district court review of final state agency decisions.

---

[1]These are the companies that have remained afer the breakup of AT&T in the 1980s.

On July 1, 2004, Defendant BellSouth, being dissatisfied with the rate announced by the TRA, filed with the FCC, pursuant to 47 C.F.R. § 1.2, an Emergency Petition for Declaratory Ruling and Preemption of State Action, asking the FCC to declare that the TRA was exceeding its enforcement authority under §271 of the 1996 Act.[2] Both Plaintiff and the TRA opposed the petition, arguing *inter alia* that the FCC does not have jurisdiction to hear the matter. The FCC has still not issued a ruling on Defendant BellSouth's petition.

On July 9, 2004, Plaintiff filed the instant suit in the United States District Court for the Eastern District of Tennessee against Defendants BellSouth, the FCC, and the TRA, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, seeking to enjoin Defendant BellSouth from seeking FCC review of the TRA arbitration ruling. Defendants BellSouth and the FCC filed motions to dismiss, which the district court referred to the magistrate judge for report and recommendation.

On November 16, 2004, the magistrate judge issued its Report and Recommendation, recommending that the district court grant Defendants' motions for dismissal for lack of subject matter jurisdiction. The magistrate judge agreed with Defendants that the district court lacked subject matter jurisdiction. Plaintiff filed objections to the magistrate judge's Report and Recommendation, but the district court, after *de novo review*, adopted the magistrate judge's Report

---

[2]Defendant BellSouth argued that the TRA did not have jurisdiction over the issue of § 271 switching rates set at market-based prices. According to Defendant BellSouth, "there is no jurisdiction in a 252 arbitration to consider – much less set rates from services that are not required to be provided at UNE rates . . . Only the FCC has jurisdiction to determine whether market rates are just and reasonable in the event of a dispute." (J.A. at 32.)

and Recommendation, and dismissed Plaintiff's complaint on January 18, 2005. Plaintiff filed this timely notice of appeal on February 16, 2005.

II.

This Court reviews *de novo* a district court's decision regarding subject matter jurisdiction. *Mattis v. Massman*, 355 F.3d 902, 905 (6th Cir. 2004); *Dixon v. Ashcroft*, 392 F.3d 212, 216 (6th Cir. 2004).

The magistrate judge, in deciding this matter, framed the issue as follows: "whether [the] grant of exclusive jurisdiction to the Court of Appeals extends to situations where the FCC has not in fact issued a final ruling." (J.A. at 99.) The magistrate judge concluded that the answer was "yes," and that decision as to the propriety of BellSouth and the FCC's actions with regard to Defendant's petition is exclusively within the jurisdiction of the court of appeals, and not the district court. We agree.

Judicial review of certain FCC orders is vested exclusively in the courts of appeal. Forty-seven U.S.C. § 402(a) provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 158 of Title 28." Chapter 158 of Title 28, (the Hobbs Act), in turn, provides:

> The court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission made reviewable by Section 402(a) of title 47 . . . .

28 U.S.C. § 2342(1). Plaintiff here argues that the instant action would not preempt court of appeals jurisdiction over the FCC's final decision in this matter because "there is no final order of the FCC

subject to the Hobbs Act," (J.A. at 98), but we agree with the magistrate judge that this argument

is foreclosed by our prior decision in *La Voz Radio v. FCC*, 223 F.3d 313 (6th Cir. 2000).

In *La Voz*, the plaintiff was an unlicensed "microbroadcaster" who had been broadcasting

from a church in Grand Rapids, Michigan. *Id*. at 316. The plaintiff filed an application for a radio

broadcast license, but continued broadcasting pending an FCC decision on his application, declaring

that he had a First Amendment right to broadcast. *Id*. The FCC ultimately denied the plaintiff's

application, but he continued to broadcast, despite letters from the FCC warning him to cease and

desist. *Id*. at 316. The plaintiff later filed another license application with the FCC, but anticipating

that this application would also be denied, he filed suit in the United States District Court for the

Western District of Michigan, seeking "an injunctive order allowing [it] to broadcast [its] religious

message and enjoining the government from civilly or criminally sanctioning [it] during the

pendency of the action." *Id*. at 317. The FCC filed a motion to dismiss for lack of subject matter

jurisdiction, arguing that Congress had made FCC licensing decisions reviewable only by the United

States Court of Appeals for the D.C. Circuit. *Id*. The district court agreed with the FCC and granted

its motion to dismiss.

On appeal, the *La Voz* plaintiff argued that 47 U.S.C. § 402 (b), which grants exclusive

jurisdiction to the United States Court of Appeals for the D.C. Circuit to review FCC licensing

decisions, did not apply because the "FCC's rejection of its application was not a 'final order'

denying it a broadcast license." *Id*. at 318. This Court rejected that argument, holding that "when

review of agency action is expressly committed to a designated court of appeals, that court of

appeals has exclusive jurisdiction over 'any suit seeking relief that might affect' its future statutory

power of review." *Id*. (citing *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984)).  The  Court reasoned that the plaintiff would be able to seek review of the FCC decision in the United States Court of Appeals for the D.C. Circuit after a final administrative action by the FCC.  *Id*. at 319 (recognizing that "federal statutes frequently assign jurisdiction to a court other than the federal district courts and when they do so, Congress negates district court jurisdiction under § 1331"); *see also Telecommunications Research*, 750 F.2d at 75 (similarly holding that where statute expressly grants jurisdiction to the courts of appeals to review final FCC orders, the lack of a final order does not automatically preclude appellate court jurisdiction).

Contrary to Plaintiff's protestations, we believe that this case fits squarely within the *La Voz* holding.  Plaintiff attempts to argue that the Hobbs Act, which grants the courts of appeals exclusive jurisdiction to review final orders of the FCC, does not apply here because the Hobbs Act only applies to final orders and the FCC has not issued a "final order" in this case.  (Plaintiff's Reply Brief at 3.)  Realizing that this argument is foreclosed by the *La Voz* holding, Plaintiff makes a related, but equally unpersuasive argument that *La Voz* does not control here because Plaintiff is not requesting relief from the conduct of the FCC, but rather is seeking redress from the conduct of BellSouth.  This argument is also without merit because no matter how Plaintiff attempts to fashion the argument, the gist of its complaint is that it is seeking to divest the FCC of jurisdiction to rule on BellSouth's petition, which this Court has already held cannot be done.

Even if, as Plaintiff argues, the appropriate forum for review of the TRA interim decision was the district court and not the FCC, the district court still does not have the jurisdiction or authority to enjoin the FCC from taking action on BellSouth's petition.  As properly stated by the

magistrate judge, "[t]o allow a party to attempt to enjoin another party from seeking FCC relief or to prohibit the FCC from acting on such a request for relief would summarily preempt the Court of Appeals from its assigned jurisdiction to review FCC actions." (J.A. at 102.) Rather, Plaintiff may properly address its concerns about the propriety of the FCC taking action on Defendant BellSouth's petition to the FCC. The FCC may well decide that Plaintiff is correct and that Defendant BellSouth's petition is not appropriate. On the other hand, the FCC may issue a ruling on the matter, at which point Plaintiff would have the right to appeal the FCC final order to the appropriate court of appeals, if it finds the decision to be wrongly decided. In the meantime, Plaintiff must simply await the FCC's decision, inasmuch as the district court properly declined to enjoin the pending FCC action.

## III.

For the foregoing reasons, we **AFFIRM** the district court's order.