State of NEW YORK, State of California, State of Connecticut, State of Vermont, State of Maine, State of New Jersey, State of Nevada, Plaintiffs,

v.

Spencer ABRAHAM, as Secretary of the United States Department of Energy, and United States Department of Energy, Defendants,

and

Air–conditioning and Refrigeration Institute, Intervenor.

Natural Resources Defense Council, Inc., Consumer Federation of America, and Public Utility Law Project, Plaintiffs,

v.

Spencer Abraham, as Secretary of the United States Department of Energy, and United States Department of Energy, Defendants,

and

Air–Conditioning and Refrigeration Institute, Intervenor.

Nos. Civ.A. 01 CIV. 5499, 01CIV.5500 (LTS)(DCF).

United States District Court, S.D. New York.

April 25, 2002.

Eliot Spitzer, Attorney General, State of New York, Albany, NY, by Peter H. Lehner, D. Scott Bassinson, Assistant Attorneys General, Bill Lockyer, Attorney General, State of California, Sacramento, CA, by Richard M. Frank, Chief Assistant Attorney General, Public Rights Division, California Attorney General's Office, Richard Blumenthal, Attorney General, State of Connecticut, Hartford, CT, by Mark Kindall, Assistant Attorney General, William H. Sorrell, Attorney General, State of Vermont, Montpelier, VT, by S. Mark Sciarrotta, Assistant Attorney General, Office of the Attorney General, Natural Resources Defense Council, Washington, DC, by Sharon Buccino, John Walke, Natural Resources Defense Council, G. Steven Rowe, Attorney General, State of Maine, Augusta, ME, by Paul Stern, Deputy Attorney General, Gerald D. Reid, Assistant Attorney General, John J. Farmer, Jr., Attorney General State of New Jersey, Trenton, NJ, by Howard Geduldig, Deputy Attorney General, Richard J. Hughes Justice Complex, Frankie Sue Del Papa, Attorney General, State of Nevada, Carson City, NV, by Timothy Hay, Chief Deputy Attorney General, Bureau of Consumer Protection, Natural Resources Defense Council, Inc., Consumer Federation of America, and Public Utility Law Project, New York City, by Katherine Kennedy, Natural Resources Defense Council, for plaintiffs.

James B. Comey, United States Attorney for the Southern District of New York, New York City, by Wendy H. Schwartz, Assistant United States Attorney, for Dep't of Energy defendants.

Wiley Rein & Fielding, LLP, Washington, DC, by John A. Hodges, James C. Rubinger, Kristina R. Osterhaus, Michelle E. Boardman, Baker, Donelson, Bearman & Caldwell, Washington, DC, by James C. Duff, for Intervenor Air–Conditioning and Refrigeration Institute.

## MEMORANDUM OPINION AND ORDER

SWAIN, District Judge.

In these consolidated actions, the Attorneys General of seven states,[1] the Natural Resources Defense Council, Inc., the Consumer Federation of America, and the Public Utility Law Project ("Plaintiffs") challenge the suspension, initiated by order dated February 2, 2001, and continued by order dated April 20, 2001, of the effective date of a final rule published by the federal Department of Energy ("DOE") in the Federal Register on January 22, 2001 (the "Final Rule"). The Final Rule, promulgated pursuant to the Energy Policy and Conservation Act ("EPCA") with a stated effective date of February 21, 2001, would have required air conditioners and heat pumps manufactured for sale in the United States to meet, as of January 23, 2006, a minimum energy efficiency, or Seasonal Energy Efficiency Ratio ("SEER"), rating of 13 for the seasonal cooling performance of air conditioners and heat pumps.[2]

---

1. The plaintiff states, each of which brings the action on behalf of itself and as *parens patriae* of the people of the state, are New York, California, Connecticut, Vermont, Maine, New Jersey, and Nevada.

2. Energy Conservation Program for Consumer Prods.: Central Air Conditioners & Heat Pumps Energy Conservation Standards, 66 Fed.Reg. 7,170, 7,171 (Jan. 22, 2001) (to be codified at 10 C.F.R. pt. 430). The SEER standard is generally accompanied by a corre-

Plaintiffs have moved for summary judgment on their causes of action seeking a declaration that DOE may not amend, withdraw, or in any way change the Final Rule so as to weaken the energy efficiency standards contained therein and an injunction prohibiting DOE from taking any such action. Plaintiffs ask the Court to set aside, as unlawful, the February 2, 2001, and April 20, 2001, rules amending the effective date of the Final Rule, declare the Final Rule effective as of February 21, 2001, and require that DOE immediately take steps necessary to implement the Final Rule. Defendant Secretary of the Department of Energy (the "Secretary") cross-moves to dismiss the actions, arguing that this Court lacks subject matter jurisdiction. The Air Conditioning and Refrigeration Institute ("ARI"), which was granted permission to intervene in this action on November 16, 2001, cross-moves to dismiss the actions for lack of subject matter jurisdiction and/or for summary judgment. For the reasons stated below, the actions are dismissed for lack of subject matter jurisdiction.

### Background

Originally enacted in 1975, EPCA authorized DOE to mandate energy efficiency labeling for major appliances and authorized, but did not require, DOE to set energy efficiency standards. The statute was amended in 1978, and again in 1987. The 1987 amendment established mandatory efficiency requirements for certain household appliances, including central air conditioners ("air conditioners") and central air conditioning heat pumps ("heat pumps"), and established a structure within which DOE was to amend and strengthen periodically the efficiency standards applicable to various classes of appliances. The 1987 amendment set, *inter alia,* a minimum energy efficiency ratio of 10 SEER for air conditioners and cooling performance of heat pumps for products manufactured after January 3, 1993, and required DOE to publish a final rule to determine whether the initial standards should be amended and, if so, to publish the amended rule by January 1, 1994. DOE was further required to publish, by January 1, 2001, a final rule to determine whether the standard should be revised further for air conditioners and heat pumps manufactured on or after January 1, 2006. 42 U.S.C. § 6295(d)(3)(B) (West 1995 & Supp.2001). The 1987 amendments also added the following provision to EPCA:

> The Secretary may not prescribe any amended standard which increases the maximum allowable energy use ... of a covered product.

42 U.S.C.A. § 6295(*o*)(1).

DOE did not meet the 1994 deadline for promulgation of a final rule addressing the initial statutory standard. Following a series of rulemaking notices [3] and a com-

sponding Heating Seasonal Performance Factor ("HSPF"). The relevant HSPF minimum was set at 7.7 in the Final Rule as of January 23, 2006, for covered products manufactured for sale in the United States. For simplicity, the Court will refer herein to the SEER standard alone.

3. The significant steps in this rulemaking process included: (1) the 1993 publication of DOE's Advance Notice of Proposed Rulemaking ("ANOPR"), indicating its intent to consider amending the energy conservation standards for air conditioners and heat pumps, *see* Energy Conservation Prog. for Consumer Prods. ("Conservation Prog."): Adv.Not. of Prop'd Rulemaking Regarding Energy Conservation Standards for Three Types of Consumer Prods., 58 Fed.Reg. 47, 326 (Sept. 8, 1993); (2) the 1998 publication of DOE's notice of a public workshop to discuss a proposed framework for evaluating revisions to air conditioner and heat pump energy efficiency standards, *see* Conservation Prog.: Not. of Public Workshop on Central Air Con-

ment period,[4] DOE published the Final Rule on January 22, 2001. The Final Rule, as noted above, bore a stated effective date of February 21, 2001, and applied a minimum 13 SEER standard to affected appliances manufactured on or after January 23, 2006.

On Saturday, January 20, 2001, the day on which President Bush was inaugurated, Andrew Card, Assistant to the President, issued a memorandum directing the heads of agencies to postpone by 60 days the effective dates of regulations that had been published but had not yet taken effect and which were not promulgated pursuant to statutory deadlines (the "Card Memorandum").[5] As previously noted, the Final Rule was published in the Federal Register on January 22, 2001, the following Monday. On February 2, 2001, DOE published a notice captioned "Final Rule; delay of Effective Date" in the Federal Register, announcing a 60-day delay in the published effective date of the Final Rule, from February 21, 2001 until April 23, 2001. 66 Fed.Reg. 8,745. The notice cited the Card Memorandum as authority for the action and asserted that the action was exempt from any otherwise applicable notice and comment requirements of the Administrative Procedure Act ("APA") because it constituted a rule of procedure or, alternatively, came within the "good cause" exemption set forth in section 553(b) of the APA (5 U.S.C. § 553(b)) because "[s]eeking public comment is impracticable, unnecessary and contrary to the public interest [and because t]he temporary 60-day delay in the effective date is necessary to give DOE officials the opportunity for further review and consideration of the new regulations, consistent with the Assistant to the President's memorandum of January 20, 2001." *Id.*

On April 20, 2001, just before the extended effective date, DOE published a further notice, captioned "Energy Conservation Program for Consumer Products; Central Air Conditioners and Heat Pumps Energy Conservation Standards," and describing itself as a "notice of further postponement of the effective date of the January 22, 2001, final rule pending the outcome of petitions by the Air-Conditioning and Refrigeration Institute (ARI) for reconsideration by DOE and for judicial review by the United States Court of Appeals for the Fourth Circuit." 66 Fed.Reg. 20,191.

ditioner Energy Efficiency Standards Rulemaking, 63 Fed.Reg. 29,357 (May 29, 1998); (3) the 1999 publication of DOE's Supplemental ANOPR to consider amending the energy conservation standards for air conditioners and heat pumps and seeking comment on candidate energy conservation standard levels developed from various analyses, *see* Conservation Prog.: Energy Conservation Standards for Central Air Conditioners and Heat Pumps, 64 Fed.Reg. 66,306 (Nov. 24, 1999); and (4) publication in 2000 of a Notice of Proposed Rulemaking ("NOPR") to raise the energy efficiency standards for air conditioners to 12 SEER and for heat pumps to 13 SEER/7.7 HSPF for all covered products offered for sale in the United States, effective on January 1, 2006, and seeking comments on the proposed standard, *see* Conservation Prog.: Central Air Conditioners and Heat Pumps Energy Conservation Standards, 65 Fed.Reg. 59,590, 59,591 (Oct. 5, 2000) *and* 65 Fed.Reg. 66,514 (Nov. 6, 2000) (Conservation Prog.: Central Air Conditioners and Heat Pumps Energy Conservation Standards; Correction).

4. *See* Conservation Prog.: Central Air Conditioners and Heat Pumps Energy Conservation Standards, 65 Fed.Reg. 59, 590, 59,591 (Oct. 5, 2000) (notice of proposed rulemaking and public hearing) *and* Conservation Prog.: Central Air Conditioners and Heat Pumps Energy Conservation Standards; Correction, 65 Fed. Reg. 66, 514 (Nov. 6, 2000).

5. The Card Memorandum was published in the Federal Register on January 24, 2001. *See* 66 Fed.Reg. 7,702.

On July 25, 2001 DOE published in the Federal Register an action captioned "Supplemental proposed rule; proposed withdrawal of final rule," in which DOE solicited comments upon proposals to withdraw the Final Rule, which DOE characterized as "setting forth energy conservation standards ... that are not yet effective and not enforceable until January 23, 2006," to substitute therefor a rule generally setting a minimum 12 SEER energy efficiency level for the affected appliances, with a July 2006 compliance date, and to establish a new principle for determining the effective dates of final regulations. 66 Fed.Reg. 38,822. DOE has left in place its April 20, 2001 Notice suspending the effective date of the Final Rule.

### Discussion

Plaintiffs challenge DOE's February 2 and April 20, 2001 actions as *ultra vires*, asserting that they constitute rulemaking noncompliant with the general notice and comment requirements of section 553(b) of the APA [6] and do not come within any of the narrow exceptions to the notice and comment rules that are set forth in that section. Taking the position that the February and April actions were themselves substantive final rules, Plaintiffs contend that they are invalid for lack of notice and comment, and that DOE did not have authority to delay the effective date of the Final Rule. Given what Plaintiffs characterize as the "anti-backsliding" provision of EPCA section 325, which has been codified at 42 U.S.C. section 6295(*o*)(1),[7] Plaintiffs assert that DOE now lacks power to reduce the minimum energy conservation requirements below the levels set forth in the Final Rule. They seek declaratory and injunctive relief to preclude DOE from taking such action, ask the Court to hold unlawful and set aside the February 2, 2001 and April 20, 2001 rules amending the effective date of the Final Rule, and seek declaratory and injunctive relief requiring DOE to take all steps necessary, immediately, to effectuate implementation of the Final Rule.

Not surprisingly, DOE and ARI (which brought a challenge to the Final Rule in the United States Court of Appeals for the Fourth Circuit [8] and petitioned DOE to reconsider the Final Rule) contend that DOE's actions in respect of the effective date of the Final Rule were entirely proper. These parties assert that any notice and comment requirement was inapplicable because the rulemaking concerned "agency organization, procedure or practice," 5 U.S.C.A. section 553(b)(A) (West 1996), or was otherwise obviated by the "good cause" exception found in section 553(b)(A) of the Administrative Procedure Act ("APA"), 5 U.S.C.A. section 553(b)(A). The reconsideration undertaken pursuant to the July 25, 2001 notice is, according to DOE and ARI, necessary to ensure the agency's compliance with EPCA's require-

---

6. EPCA incorporates procedural requirements, paralleling substantially the notice and comment requirements of APA section 553(b), for "prescribing new or amended [energy conservation] standards." *See* 42 U.S.C.A. § 6295(p); *see also id.* at § 6306(a)(1) (West 1995 & Supp.2001) (requiring opportunity for interested persons to present data, views and arguments with respect to any proposed rule). Although sections 6295(p) and 6306(a)(1) do not incorporate the notice and comment exceptions found in APA section 553(b), the parties agree that the general provisions of the APA apply except as specifically modified by EPCA provisions.

7. "The Secretary may not prescribe any amended standard which increases the maximum allowable energy use ... of a covered product." 42 U.S.C.A. § 6295(*o*)(1).

8. Prompted by a joint DOE/ARI motion, on April 6, 2001, the Fourth Circuit suspended briefing pending resolution of the petition for reconsideration before the DOE.

ment that "[a]ny new or amended energy conservation standard prescribed by the Secretary ... for any type ... of covered product shall be designed to achieve the maximum improvement in energy efficiency ... which the Secretary determines is technologically feasible and economically justified." 42 U.S.C.A. § 6295(*o*)(2)(A). Any potential ramifications of the so-called anti-backsliding rule are, these parties assert, rendered irrelevant by the suspension of the effective date of the Final Rule.

*Jurisdiction to Review Agency Action*[9]

■ Plaintiffs invoke the Court's federal question jurisdiction, *see* 28 U.S.C.A. § 1331 (West 1993), which generally provides the district courts with subject matter jurisdiction to review agency rulemaking. *See Clark v. Commodity Futures Trading Comm.*, 170 F.3d 110, 113 n. 1 (2d Cir.1999) ("The APA does not ... itself confer jurisdiction to review the decision of an administrative agency.... District courts, unlike courts of appeals, require no further statutory authority to hear appeals from agency decisions than the federal question jurisdiction set forth at 28 U.S.C. § 1331. Thus, *in the absence of a statute bestowing judicial review,* the only federal court with jurisdiction to review an agency decision is the district court." (Citation omitted; emphasis supplied.)). EPCA provides for judicial review of agency rules promulgated thereunder, as follows:

Any person who will be adversely affected by a rule prescribed under section ... 6295 of this title may, at any time within 60 days after the date on which such rule is prescribed, file a petition with the United States court of appeals for the circuit in which such person re-sides or has his principal place of business, for judicial review of such rule.... Upon the filing of the petition ..., the court shall have jurisdiction to review the rule in accordance with chapter 7 of Title 5 and to grant appropriate relief as provided in such chapter. No rule under section ... 6295 of this title may be affirmed unless supported by substantial evidence.

EPCA, § 336, codified at 42 U.S.C.A. § 6306(b)(1), (2) (West 1995 & Supp. 2001).[10] The statute includes a "savings" clause, providing that "[t]he remedies provided for in this subsection shall be in addition to, and not in substitution for, any other remedies provided by law" (*id.* at § 6306(b)(4)) and a specific provision (clearly inapplicable here) for district court jurisdiction of actions brought by persons challenging state or local government compliance with the statute and by persons whose petitions for further amendments to energy conservation standards are denied by the Secretary of the DOE (*id.* at § 6306(c)). Plaintiffs assert that the February 2 and April 20 actions do not constitute "rule[s] prescribed under section ... 6295" and that, even if they did, the "savings" clause preserves district court jurisdiction of their challenge to those actions notwithstanding the specific grant of jurisdiction to the circuit courts for challenges of such rules.

In this Court's view, the February 2 and April 20 DOE actions, which have no substantive effect except insofar as they alter the effective date of the Final Rule, are best understood as modifications or amendments of that Rule, and thus consti-

---

**9.** *DOE and ARI have not disputed Plaintiffs'* assertion that they have standing to bring the instant actions.

**10.** Chapter 7 of U.S.C. Title 5, referred to in Section 6306(b), is part of the APA and pro-vides for judicial review of claims of legal wrongs, or claims of adverse effects and aggrievement within the meaning of a given statute, allegedly resulting from agency action. *See* 5 U.S.C.A. § 702 (West 1996).

tute elements of a rule prescribed under section 6295. *Cf. Natural Resources Def. Council v. Envtl. Prot. Agency,* 683 F.2d 752, 761–61 (3d Cir.1982) ("We conclude that, under the facts of this case, EPA's action in indefinitely postponing the effective date of the amendments fit the definition of 'rule' in the APA. . . . In general, an effective date is 'part of an agency statement of general or particular applicability and of future effect.' It is an essential part of any rule: without an effective date, the 'agency statement' could have no 'future effect,' and could not serve to 'implement, interpret or prescribe law or policy.' In short, without an effective date a rule would be a nullity because it would never require adherence."); 5 U.S.C.A. § 551(4), (5) (West 1996) (APA provisions defining "rule" and "rule making").

 It is unclear what purpose the savings clause serves in section 6295. Circuit precedent counsels in favor of deference to circuit jurisdiction under these circumstances. This Circuit has held in light of the Supreme Court's decision in *Florida Power & Light Co. v. Lorion*[11] that, where a statute establishing circuit court jurisdiction to review agency action is ambiguous, the ambiguity must be resolved in favor of circuit, rather than district court, jurisdiction. *Clark,* 170 F.3d at 114. *See Florida Power & Light,* 470 U.S. at 745, 105 S.Ct. 1598 ("Absent a firm indication that Congress intended [in a particular statute] to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals." (Emphasis omitted.)) *Cf. Sun Enter., Ltd. v. Train,* 532 F.2d 280, 288 (2d Cir.1976) (judicial review provision of APA applies, "by its own terms, only where 'there is no other adequate remedy in a court' "; provision of

federal Water Act providing circuit court jurisdiction for, *inter alia,* review of performance standards promulgated by Environmental Protection Agency and agency issuance or denial of permits "precludes the application of . . . [APA section] 704.").

The District of Columbia and Third Circuits have also defaulted in favor of circuit jurisdiction to review agency actions relating to rulemakings, where statutes provided for circuit review of agency rulemaking. *See Telecomm. Research & Action Ctr. v. FCC,* 750 F.2d 70, 72 (D.C.Cir.1984) (court of appeals has exclusive jurisdiction of petition for writ of mandamus to compel agency to decide certain unresolved matters because "where a statute commits final agency action to review by the Court of Appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review."); *Envtl. Def. Fund v. Gorsuch,* 713 F.2d 802, 813, 816 (D.C.Cir.1983) (court of appeals had exclusive jurisdiction of action challenging agency deferral of processing of certain operating permits; "an agency decision which effectively suspends the implementation of important and duly promulgated standards . . . constitutes rulemaking subject to notice and comment requirements of [the APA]"); *NRDC,* 683 F.2d at 760 (postponement of effective date of regulations "published in final form as a 'final rule' " is "final action" subject to judicial review by circuit court).

The ultimate issue posed by Plaintiffs also counsels against the notion of district court jurisdiction of this controversy. In addition to the substantial questions raised regarding whether DOE had the power unilaterally to suspend the published effective date of a rule previously published as "final," even for purposes of "reconsideration," without notice and comment—an is-

---

**11.** 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985).

sue arguably separable from substantive questions of energy conservation regulation—this litigation puts squarely in controversy the construction of section 325(o)(1) of EPCA (42 U.S.C. § 6295(o)(1)). Plaintiffs contend that, if the DOE lacked the power to alter the published effective date of the Final Rule, this "anti-backsliding" provision of EPCA became applicable as of February 21, 2001, the originally-designated effective date of the Final Rule, and thus fixed, as of that date, SEER 13 as the minimum energy conservation standard applicable as of January 23, 2006 for the seasonal cooling performance of air conditioners and heat pumps manufactured for sale in the United States. If Plaintiffs are correct, the rulemaking proceeding commenced by DOE's July 25, 2001 notice is beside the point, as it seeks to set SEER 12 as the relevant minimum standard. Indeed, Plaintiffs ask this Court to require the immediate implementation of the Final Rule. DOE and ARI, on the other hand, construe the APA to permit the agency to continue action on a rulemaking proceeding notwithstanding publication of a "final rule" and to adjust the applicable effective date. In their view, the anti-backsliding provision sets a regulatory floor only, at the earliest, as of the adjusted effective date designated by the agency. The resolution of this "anti-backsliding" controversy will set important parameters for future legislative rulemaking pursuant to section 6295 and is clearly within the ambit of the circuit jurisdiction contemplated by EPCA section 6306 (providing for circuit review of petitions brought on by persons adversely affected

by rules "prescribed under" section 6295).[12]

For all of the foregoing reasons, the Court finds that it lacks subject matter jurisdiction to consider the matters raised by Plaintiffs, and DOE's motion to dismiss the complaints in the above-captioned actions is granted pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs' motion for summary judgment is denied without prejudice. In light of the Court's decision on DOE's motion to dismiss, the Court need not reach ARI's similar motion or its motion for summary judgment.

SO ORDERED.

---

12. The parties dispute vigorously the questions of whether the issues raised by Plaintiffs' complaints are ripe for review, and whether the notice and comment proceeding instituted on July 25, 2001 moots any infirmity arguably arising from the February 2 and April 20, 2001 actions. In view of this

Court's resolution of the question of its subject matter jurisdiction, these issues are ones to be raised in a circuit court of appeals. In addition to the Fourth Circuit proceeding brought on by ARI, a Second Circuit proceeding commenced by the states of New York and Connecticut is pending.