# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

––––––

Argued May 8, 2012                    Decided June 1, 2012

No. 12-1118

IN RE: PEOPLE'S MOJAHEDIN ORGANIZATION
OF IRAN, PETITIONER

––––––

On Petition For A Writ of Mandamus
To Enforce This Court's Mandate

––––––

*Viet D. Dinh* argued the cause for the petitioner. *Nathan A. Sales*, *George W. Hicks, Jr.*, *Andrew L. Frey*, *Miriam R. Nemetz* and *Steven M. Schneebaum* were on brief.

*Alan M. Dershowitz* was on brief for the *amici curiae* Michael B. Mukasey et al., in support of the petitioner.

*Robert M. Loeb*, Attorney, United States Department of Justice, argued the cause for the respondent. *Stuart F. Delery*, Acting Assistant Attorney General, *Douglas N. Letter* and *Matthew M. Collette*, Attorneys, were on brief.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed PER CURIAM.

PER CURIAM: On July 16, 2010, we remanded this case to the Secretary (Secretary) of the United States Department of

State (State Department, State), concluding that the Secretary had violated the due process rights of the petitioner, the People's Mojahedin Organization of Iran (PMOI), by maintaining its designation as a Foreign Terrorist Organization (FTO) under the Antiterrorism and Effective Death Penalty Act (AEDPA, Act), 8 U.S.C. § 1189. *PMOI v. U.S. Dep't of State*, 613 F.3d 220, 230-31 (D.C. Cir. 2010) (*PMOI III*).[1] We instructed the Secretary to allow PMOI to "review and rebut the unclassified portions of the record on which [the Secretary] relied" in denying PMOI's petition for revocation of its FTO listing and to "indicate in her administrative summary which sources she regards as sufficiently credible that she relies on them." *Id.* at 230. It has been nearly two years since our remand and the Secretary has yet to issue a reviewable ruling on PMOI's petition. PMOI now seeks a writ of mandamus ordering the delisting of PMOI or, alternatively, requiring the Secretary to make a decision on PMOI's petition or our setting aside her FTO designation. For the reasons set forth below, we order the Secretary to act on PMOI's petition not later than four months from the issuance of this opinion; failing that, the petition for a writ of mandamus setting aside the FTO designation will be granted.

## I.

Under the AEDPA, the Secretary designates an entity a FTO if: (1) "the organization is a foreign organization;" (2) "the organization engages in terrorist activity . . . or terrorism . . . or retains the capability and intent to engage in terrorist activity or terrorism;" and (3) "the terrorist activity or terrorism of the organization threatens the security of United

---

[1] Because PMOI is the petitioner, we refer to PMOI and its associated aliases and alter egos—including the National Council of Resistance of Iran and the Majahedin-e Khalq Organization—as PMOI.

States nationals or the national security of the United States." 8 U.S.C. § 1189(a)(1). A FTO designation results in several "dire consequences" for an organization, its members and other supporters. *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 200 (D.C. Cir. 2001). Specifically, the Secretary of the United States Treasury Department can freeze the FTO's assets, 8 U.S.C. § 1189(a)(2)(C); FTO members are barred from entering the United States, *id.* § 1182(a)(3)(B)(i)(IV), (V); and anyone who knowingly provides "material support or resources" to a FTO is subject to a fine and/or imprisonment for up to fifteen years, 18 U.S.C. § 2339B(a)(1).

As originally enacted, the AEDPA enabled the Secretary to maintain a FTO designation for two years. *See* 8 U.S.C. § 1189(a)(4)(A) (2003). At the end of the two years, the Secretary either renewed the designation or allowed the designation to lapse. *Id.* §1189(a)(4)(B) (2003). In 2004, however, the Congress lessened the Secretary's administrative burden and removed the two-year limitation. *See* Intelligence Reform and Terrorist Prevention Act of 2004, Pub. L. No. 108-458, § 7119, 118 Stat. 3638, 3801 (2004). Today, the Secretary's designation no longer lapses; instead, every two years, a FTO can file a petition for revocation with the Secretary to challenge its listing. *See* 8 U.S.C. § 1189(a)(4)(B)(ii). To seek revocation, a FTO "must provide evidence in that petition that the relevant circumstances . . . are sufficiently different from the circumstances that were the basis for the designation such that a revocation with respect to the organization is warranted." *Id.* § 1189(a)(4)(B)(iii).

The Act gives the Secretary 180 days to take action on a petition for revocation. *Id.* § 1189(a)(4)(B)(iv)(I) ("Not later than 180 days after receiving a petition for revocation . . . , the Secretary shall make a determination as to such revocation."). While the Secretary may revoke a designation at any time, the

Act directs that she "shall" revoke a designation if she finds either "the circumstances that were the basis for the designation have changed in such a manner as to warrant revocation" or the "national security of the United States warrants revocation." *Id.* § 1189(a)(6)(A). In making her decision, the Secretary may rely on both classified and unclassified information; the classified information "shall not be subject to disclosure . . . except that such information may be disclosed to a court ex parte and in camera for purposes of judicial review." *Id.* § 1189(a)(4)(B)(iv)(II).

If the Secretary denies a FTO's revocation petition, the organization can seek review in this Court within thirty days of the denial. *See id.* § 1189(c)(1). "In APA-like language," *PMOI v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999) (*PMOI I*), the Act instructs us to "hold unlawful and set aside a designation, amended designation, or determination in response to a petition for revocation" that we find:

(A)     arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B)     contrary to constitutional right, power, privilege, or immunity;

(C)     in excess of statutory jurisdiction, authority, or limitation, or short of statutory right;

(D)     lacking substantial support in the administrative record taken as a whole or in classified information submitted to the court under paragraph (2), or

(E)     not in accord with the procedures required by law.

8 U.S.C. § 1189(c)(3). This standard applies only to the first and second FTO criteria—that the organization is foreign and that it engages in terrorism or terrorist activity or retains the

capability and intent to do so. *PMOI III*, 613 F.3d at 223. We have held that the third—that the organization's activities threaten U.S. nationals or national security—presents an unreviewable political question. *Id.* (citing *PMOI I*, 182 F.3d at 23).

Almost four years ago, on July 15, 2008, PMOI filed a petition for revocation of the Secretary's 2003 designation.[2] In its petition, PMOI argued that, although it had engaged in terrorist actions in the past, circumstances had changed dramatically since 2003. *PMOI III*, 613 F.3d at 225. PMOI asserted *inter alia* that it had ceased its military campaign against the Iranian regime, renounced violence, surrendered its arms to U.S. forces in Iraq, cooperated with U.S. officials at Camp Ashraf (where its members operating in Iraq were consolidated), shared intelligence with the U.S. government regarding Iran's nuclear program and obtained " 'protected person' status" for all PMOI members at Camp Ashraf under the Fourth Geneva Convention. *Id.*[3]

---

[2] The Secretary first designated the PMOI as a FTO in 1997 and made successive designations in 1999, 2001 and 2003. *See* Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52,650 (Oct. 8, 1997); Designation of Foreign Terrorist Organizations, 64 Fed. Reg. 55,112 (Oct. 8, 1999); Redesignation of Foreign Terrorist Organizations, 66 Fed. Reg. 51,088, 51,089 (Oct. 5, 2001); Redesignation of Foreign Terrorist Organizations, 68 Fed. Reg. 56,860, 56,861 (Oct. 2, 2003). We have upheld the successive designations. *See PMOI I*, 182 F.3d 17, 25; *PMOI v. Dep't of State*, 327 F.3d 1238, 1239 (D.C. Cir. 2003) (*PMOI II*); *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 154 (D.C. Cir. 2004).

[3] As a result of these changed circumstances, the United Kingdom removed PMOI from its list of terrorist organizations in 2008 and the European Union followed suit in 2009. *See PMOI III*, 613 F.3d at 225.

On January 7, 2009, Secretary Condoleezza Rice denied PMOI's petition. *See* 74 Fed. Reg. 1273, 1273-74 (Jan. 12, 2009). She found that: "In considering the evidence as a whole, . . . [PMOI] ha[d] not shown that the relevant circumstances [we]re sufficiently different from the circumstances that were the basis for the 2003 []designation" and that "[a]s a consequence, [PMOI] continues to be a foreign organization that engages in terrorist activity . . . or terrorism . . . or retains the capability and intent to" do so. *PMOI III*, 613 F.3d at 226 (quotation marks omitted). She noted, however, that changed circumstances since 2003 warranted reconsidering PMOI's FTO status in the future: "In light of the evidence submitted by [PMOI] that it has renounced terrorism and the uncertainty surrounding [PMOI's] presence in Iraq, the continued designation of [PMOI] should be reexamined by the Secretary of State in the next two years even if [PMOI] does not file a petition for revocation." *Id.* (quotation marks omitted).

PMOI timely petitioned for review of the Secretary's decision, arguing that the determination lacked substantial support in the administrative record and that the Secretary's procedures did not provide it due process. On July 16, 2010, we granted the petition, concluding that "the Secretary failed to accord the PMOI the due process protections outlined in our previous decisions." *Id.* at 222. Specifically, we held that "due process requires that the PMOI be notified of the unclassified material on which the Secretary proposes to rely and [be given] an opportunity to respond to that material *before* its re-designation." *Id.* at 228 (emphasis in original). Because the Secretary had failed to allow PMOI access to the unclassified material before she made her decision, we remanded the case to the Secretary for her to provide PMOI that access. *Id.* at 230. We also instructed the Secretary to "indicate in her administrative summary which sources she regards as sufficiently credible that she relies on them" in

maintaining PMOI's designation and to "explain to which part of section 1189(a)(1)(B) the information she relies on relates." *Id.*

Since our July 2010 remand, the Secretary's progress has been—to say the least—slow going. In an October 18, 2010 letter, the United States Department of Justice (DOJ), acting on behalf of the Secretary, outlined its procedure for complying with our remand. Pet'r's Ex. 1. DOJ explained that PMOI had "received all of the unclassified material contained in the administrative record to date" but that the State Department intended to "update that administrative record with additional material relevant to the designation" before the Secretary rendered her decision. *Id.* Any "[a]dditional unclassified material," DOJ explained, was to be "provided to [PMOI] by October 29, 2010." *Id.* On October 29, DOJ notified PMOI that State had "begun the process of updating the administrative record with additional material" relevant to PMOI's petition but that, at that time, there were "no additional unclassified exhibits . . . to incorporate into the administrative record." Pet'r's Ex. 2. It then requested that PMOI "make any submission concerning the unclassified material previously provided . . . no later than December 29, 2010." *Id.* PMOI timely complied, submitting affidavits and other documentation supporting its delisting. Mandamus Pet. 11. Five months later, in April 2011, counsel for PMOI met with officials from DOJ and State. *Id.* At that time, PMOI submitted additional information in support of its cause—including a description of the allegedly deteriorating conditions at Camp Ashraf and letters and affidavits of support written by American and foreign leaders. *Id.* On May 20, 2011 (nearly one year after our remand), DOJ sent PMOI's counsel ten additional documents that it proposed to add to the administrative record. Pet'r's Ex. 3. On June 6, 2011, PMOI responded to each of the ten documents, maintaining that none provided information not already in the

administrative record. *See* Mandamus Pet. 12.

On August 4, 2011, DOJ informed PMOI that "the process of declassifying information intended for use in the consideration of the delisting petition [was] complete" and that "State is working as quickly as possible on its review of the designation." Pet'r's Ex. 4. On September 27, 2011, DOJ added two documents to the record, Pet'r's Ex. 5, and, one week later, PMOI again labeled the documents duplicative. Mandamus Pet. 12. Since October 2011, DOJ has not asked PMOI for additional information, PMOI has not submitted any and—most important—the Secretary has not taken final action on PMOI's petition.

On February 27, 2012, PMOI petitioned us for the issuance of a writ of mandamus.

## II.

"Our consideration of any mandamus petition 'starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act.' " *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *In re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000)). It is, of course, undisputed that the Secretary has a "clear duty" to respond to this Court's remand. *See id.* In the case of agency inaction, however, "we not only must satisfy ourselves that there indeed exists such a duty, but that the agency has unreasonably delayed the contemplated action." *Bluewater*, 234 F.3d at 1315 (quotation marks omitted). "There is no *per se* rule as to how long is too long to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004). Instead, we analyze a claim of unreasonable delay under the "hexagonal" standard outlined in *Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*):

(1) The time agencies take to make decisions must

be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (quotation marks omitted). In each case, the central question is "whether the agency's delay is so egregious as to warrant mandamus." *Core Commc'ns*, 531 F.3d at 855 (quotation marks and citation omitted). We believe the Secretary's delay in acting on PMOI's petition for revocation is egregious.

The AEDPA provides that the Secretary "shall make a determination" on a petition of revocation "[n]ot later than 180 days after receiving [the] petition." 8 U.S.C. § 1189(a)(4)(B)(iv)(I). It has been twenty months (approximately 600 days) since our remand and the Secretary has yet to make a final, reviewable decision. While a violation of a statutory deadline "does not, alone, justify judicial intervention," *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991), the Congress's timetable "may supply content for th[e] rule of reason," *TRAC*, 750 F.2d at 80—the "first and most important" of the *TRAC* factors. *Core Commc'ns*, 531 F.3d at 855. The specificity and relative brevity of the 180-

day deadline manifests the Congress's intent that the Secretary act promptly on a revocation petition and delist the organization if the criteria for the listing no longer exist. The Secretary's twenty-month failure to act plainly frustrates the congressional intent and cuts strongly in favor of granting PMOI's mandamus petition.[4] The Secretary argues that because she "must make a decision in this matter while carrying out duties of the most paramount importance, addressing nearly constant emergencies," it would be "inappropriate" for us to rule that she "is not acting quickly enough on a single matter." Opp'n to Mandamus Pet. 14. But the Congress undoubtedly knew the enormous demands placed upon the Secretary and nonetheless limited her time to act on a petition for revocation to 180 days, 8 U.S.C. § 1189(a)(4)(B)(iv)(I), and included explicit provisions for our review, *id.* § 1189(c)(3).

Additionally, the Secretary's failure to act insulates her decision from our review under the AEDPA. As noted above, a FTO may, within thirty days, seek review of the Secretary's denial of its petition for revocation in this Court. *See id.* § 1189(c)(1) ("Not later than 30 days after publication in the Federal Register of a designation, an amended designation, or a determination in response to a petition for revocation, the designated organization may seek judicial review in the District of Columbia Circuit."). By failing to make a final decision on PMOI's petition, the Secretary is able to maintain PMOI's designation while precluding PMOI from seeking judicial review. That is, because of the Secretary's inaction, PMOI is stuck in administrative limbo; it enjoys neither a favorable ruling on its petition nor the opportunity to

---

[4] While the Act imposes a 180-day deadline to act, 8 U.S.C. § 1189(a)(4)(B)(iv)(I), that deadline is not directly applicable to this mandamus proceeding to enforce our own order of remand.

challenge an unfavorable one.

Decisive to us, however, is the fact that the Secretary has failed to heed our remand. In *In re Core Communications, Inc.*, this Court highlighted the difference between an agency that simply fails to "respond[] to [a] request[] by [a] private part[y] to take administrative action" and one that fails to "respond to our own remand." 531 F.3d at 856. In that case, we invalidated the Federal Communication Commission's (FCC) inter-carrier compensation rules without vacating them because we "believ[ed] that there was a 'non-trivial likelihood' that the Commission would be able to state a valid legal basis for its rules" on remand. *Id.* at 861 (citation omitted). Six years later the rules remained in place and the FCC had yet to articulate a "valid legal basis." *Id.* In response to the petitioners' mandamus petition, we noted that, while the *TRAC* factors were "not unimportant," *id.* at 855, our overriding concern was that the agency's delay "effectively nullified our determination that [its] interim rules are invalid" and "insulated" the FCC's rules from "further review" by making it impossible for the petitioners to "mount a challenge to the rules." *Id*. at 856. We thus issued the writ vacating the rule, effective four months from the date of the opinion's issuance "unless the court is notified that the [FCC] has complied with our direction before that date." *Id.* at 861.

Here too, the Secretary has not merely failed to meet the AEDPA's deadline or respond to the requests of the petitioner or a third party. She is failing to meet *our* remand mandate. And, here too, the delay has the effect of nullifying our decision while at the same time preventing PMOI from seeking judicial review. Although our remand opinion did not specify a deadline, neither did the remand order in *Core Communications.* We have been given no sufficient reason why the Secretary, in the last 600 days, has not been able to make a decision which the Congress gave her only 180 days

to make. If the Secretary wishes to maintain PMOI's FTO status, she can do so by simply denying PMOI's petition.

What remains is the content of the writ to issue. PMOI asks us to "issue an order directing the Secretary to revoke PMOI's FTO designation" or in the alternative "requiring the Secretary to decide its revocation petition within [thirty] days and specifying that, if she does not, the designation shall be revoked." Mandamus Pet. 4. In light of the national security and foreign policy concerns underlying the designation, we decline, at this time, to revoke the FTO's designation. Instead, we order the Secretary to either deny or grant PMOI's petition not later than four months from the date this opinion issues.[5] Once she makes her decision, it is, of course, entitled to great deference. *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) ("[O]ur review—in [this] area at the intersection of national security, foreign policy, and administrative law—is extremely deferential."); *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) (where a "regulation involves the conduct of foreign affairs, we owe the executive branch even more latitude than in the domestic context") (cited by *Gonzales*, 477 F.3d at 734). If she fails to take action within that period, the petition for a writ of mandamus setting aside the FTO designation will be granted.

*So ordered.*

---

[5]    Although PMOI urges us to impose a thirty-day deadline, it is clear that obtaining *a* deadline is its foremost concern. Oral Arg. Tr. at 51. We arrive at the four-month deadline in part because four months should allow enough time for the completion of PMOI's move from Camp Ashraf, the monitoring of which the Secretary claims will be exceptionally useful for its determination, *id.* at 20-21, as well as time to complete the process of analysis, judgment and explication.